UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA**<br><br>v.<br><br>**JONATHAN MOZEAK,**<br>**Defendant.** | DOCKET NO. 3:24-CR-0261 |

### THE UNITED STATES' RESPONSE IN OPPOSITION
### TO DEFENDANT'S MOTION TO SUPPRESS

### I. SUMMARY OF ARGUMENT

Defendant Jonathan Mozeak ("Defendant") was stopped in Oklahoma for speeding. Upon being stopped, the Trooper noted numerous facts that made him suspicious that Defendant and his passenger were transporting narcotics or bulk currency. At one point in the stop the Trooper smelled "raw" marijuana emanating from the vehicle. Based on these facts, the Trooper extended the traffic stop for ten minutes after giving Defendant a warning for speeding. After a police canine alerted to the trunk area of the vehicle, law enforcement searched the vehicle and located $383,590 in bulk currency. The Trooper had reasonable suspicion to extend the stop of Defendant's vehicle to allow a canine to respond to the scene. Once the canine alerted, there was clearly probable cause to search the Defendant's vehicle. Defendant's motion to suppress should be denied.

### II. FACTS

Defendant and a female passenger ("TD") were encountered by law enforcement in Oklahoma on Monday, November 30, 2020 at approximately 2:40am. Defendant was driving a black GMC Yukon with a North Carolina license plate and TD was the only other passenger. Trooper Taylor made a traffic stop after seeing the Yukon travel 68 m.p.h. in a 65 m.p.h. zone and

1

then 73 m.p.h. in a 70 m.p.h. zone. When Trooper Taylor first approached the vehicle, he saw that the Yukon had a "lived-in" look and he saw multiple cell phones and five bags of luggage in the cabin. Trooper Taylor asked Defendant to come sit with him in his police cruiser while he ran his checks and typed up a warning ticket. While Trooper Taylor checked Defendant's license and the vehicle's registration, Defendant stated that he was on his way to California to visit a buddy and that he planned to stay in a hotel in California. Approximately four minutes into the traffic stop, Trooper Taylor radioed for a drug-detecting dog.

Trooper Taylor continued to have a casual, relaxed conversation with Defendant while he ran his checks and typed the warning ticket. Defendant said the vehicle was rented, and Trooper Taylor went to retrieve the vehicle's rental agreement. During this approach, Trooper Taylor spoke to the passenger TD. As he spoke with TD, Trooper Taylor smelled "raw" marijuana coming from inside the Yukon. The rental agreement for the Yukon indicated that it was a one-way rental. Trooper Taylor believed the one-way rental was suspicious. Based on his training and experience, Trooper Taylor believed the one-way rental indicated possible criminal conduct. TD told Trooper Taylor that she and Defendant were "on a mission to Arizona." Trooper Taylor asked how long they would be in Arizona, and TD responded until "Wednesday." The story given by TD conflicted with the story given by Defendant, which was that they were going to California.

Trooper Taylor then returned to Defendant. Defendant explained that TD had rented the Yukon, but that he was an authorized driver. When Trooper Taylor asked Defendant about the one-way rental, he explained that they were going to fly back to North Carolina from California because of his hemorrhoids. Trooper Taylor asked if there was any marijuana or bulk cash in the vehicle. Defendant said "no." Defendant refused to give consent to search his vehicle.

Around 16 minutes into the investigative stop, another officer arrived. Trooper Taylor told the officer that Defendant and TD gave conflicting stories and that he smelled marijuana coming from inside the Yukon. Trooper Taylor asked the second officer when the drug-detecting dog would arrive, and the other officer stated that it would be a little while longer. Trooper Taylor then returned and resumed small talk with Defendant before asking him which bags in the vehicle belonged to him, and Defendant indicated that two of the bags belonged to him. Trooper Taylor also informed Defendant that he smelled marijuana and that he was going to search the vehicle. Trooper Taylor then reapproached the Tahoe and asked TD what bags belonged to her, and she claimed one of the bags.[1] This also increased Trooper Taylor's suspicions since there were a total of 5 bags in the car. Trooper Taylor printed out a warning at approximately 22 minutes into the dash-cam video.

The police drug-detecting dog "Logan" arrived and began its search approximately 31 minutes into the traffic stop. Logan is certified by the State of Oklahoma to detect narcotics. Logan sniffed the exterior of the Yukon and alerted to the odor of narcotics coming from inside. Trooper Taylor then searched the Yukon and found a number of bundles containing a total of $383,590.

### III. LEGAL ARGUMENT

**A. The Trooper had least reasonable suspicion to extend the traffic stop because he smelled marijuana, was given inconsistent statements by the occupants of the vehicle, and observed behavior consistent with transporting contraband including lengthy travel by car and returning by plane, and an apparent effort to avoid admitting ownership of containers within the car.[2]**

---

[1] TD also appears to claim a handbag, but the audio is poor at times and difficult to understand. It is unclear if this was one of the five bags Trooper Taylor referenced.
[2] Defendant does not appear to challenge the legality of the stop itself.

3

It is well-established that "[t]emporary detention of individuals during the stop of an automobile by the police, even if only for a brief period and for a limited purpose, constitutes a 'seizure' " under the Fourth Amendment. *Whren v. United States*, 517 U.S. 806, 809–10 (1996); *see also* U.S. Const. amend. IV (protecting "against unreasonable searches and seizures...."). A traffic stop, therefore, must satisfy the Fourth Amendment's reasonableness limitation. *Whren*, 517 U.S. at 810; *United States v. Arvizu*, 534 U.S. 266, 273 (2002) (stating that the guarantees under the Fourth Amendment extend to "brief investigatory stops of persons or vehicles"). In that regard, "[b]ecause a traffic stop is more akin to an investigative detention than a custodial arrest," we apply the two-prong standard articulated in *Terry v. Ohio*, 392 U.S. 1 (1968) in determining whether a stop is reasonable. *United States v. Williams*, 808 F.3d 238, 245 (4th Cir. 2015).

Pursuant to *Terry*, a traffic stop comports with the reasonableness standard of the Fourth Amendment where (1) the "stop [i]s legitimate at its inception" and (2) "the officer's actions during the seizure [are] reasonably related in scope to the basis for the traffic stop." *United States v. Bowman,* 884 F.3d 200, 209 (4th Cir. 2018) (internal quotation marks and citations omitted). An initial traffic stop is warranted where an officer has "probable cause to believe that a traffic violation has occurred." *Whren*, 517 U.S. at 810, 116 S.Ct. 1769. The acceptable duration of a traffic stop "is determined by the seizure's mission—to address the traffic violation that warranted the stop and attend to related safety concerns." *Rodriguez v. United States*, 575 U.S. 348, 354 (2015) (internal quotation marks and citation omitted). Ordinary tasks related to a traffic stop include "checking the driver's license, determining whether there are outstanding warrants against the driver, and inspecting the automobile's registration and proof of insurance." *Id.* at 349.

Nonetheless, "a seizure that is lawful at its inception can violate the Fourth Amendment if its manner of execution unreasonably infringes interests protected by the Constitution." *Illinois v.*

*Caballes*, 543 U.S. 405, 407, 125 S.Ct. 834, 160 L.Ed.2d 842 (2005). For instance, "[a] seizure that is justified solely by the interest in issuing a warning ticket to the driver can become unlawful if it is prolonged beyond the time reasonably required to complete that mission." *Id.*

In addition, an officer may permissibly ask questions of the vehicle's occupants that are unrelated to the violation, provided that doing so does not prolong the stop absent independent reasonable suspicion. *Id.* at 355. In assessing the reasonableness of a stop, we consider "what the police in fact do." *Id.* at 357. Thus, the "critical question" is not whether the unrelated investigation "occurs before or after the officer issues a ticket," but whether conducting the unrelated investigation "prolongs—i.e., adds time to—the stop." *Id.* (internal quotation marks omitted). The justification for a stop exists under the Fourth Amendment even when an officer hopes to find evidence of a greater offense. *See, Whren,* 517 US at 812–813 (finding that the actual motivations of individual officers have no bearing on an analysis of the reasonableness of the traffic stop); *see also United States v. Hassan-El*, 5 F.3d 726, 730 (4th Cir. 1993).

During a traffic stop an officer "must possess a justification for doing so other than the initial traffic violation that prompted the stop in the first place." *United States v. Branch,* 537 F.3d 328, 336 (4th Cir.2008). This requires "either the driver's consent or a 'reasonable suspicion' that illegal activity is afoot." *Id.; United States v. Rodriguez*, 135 S.Ct. 1609, 1616-1617 (2015). Courts look at the totality of the circumstances and analyze whether the officer has a particularized, objective basis for suspecting legal wrongdoing. *United States v. Arvizu,* 534 U.S. 266, 273 (2002). The reasonable suspicion standard requires "'considerably less than proof of wrongdoing by a preponderance of the evidence, and obviously less than is necessary for probable cause.'" *Kansas v. Glover*, 589 U.S. 376 (2020) (quoting *Prado Navarette v. California*, 572 U.S. 393, 397 (2014)). In order to meet this standard, an "officer's suspicions must ... be more than an

'inchoate and unparticularized suspicion or hunch'" of criminal activity. *United States v. Johnson*, 599 F.3d 339, 345 (4th Cir. 2010) (citing *Terry*, 392 U.S. at 27). Rather, "a police officer must offer 'specific and articulable facts' that demonstrate at least 'a minimal level of objective justification' for the belief that criminal activity is afoot." *Bowman*, 884 F.3d at 213 (quoting *United States v. Branch*, 537 F.3d 328, 337 (4th Cir. 2008)). We "'cannot reasonably demand scientific certainty ... where none exists,'" and "must permit officers to make 'commonsense judgments and inferences about human behavior.'" *Glover*, 140 S. Ct. at 1188 (quoting *Illinois v. Wardlow*, 528 U.S. 119, 125 (2000)). The possibility that some facts on their own might be innocently explained does not suffice to defeat a finding of reasonable suspicion if "the articulated factors ... 'in their totality serve to eliminate a substantial portion of innocent travelers.'" *United States v. Palmer*, 820 F.3d 640, 650 (4th Cir. 2016)(quoting *Williams*, 808 F.3d at 246); *see also Navarette*, 572 U.S. at 403 (noting that an officer "'need not rule out the possibility of innocent conduct'"). Seemingly innocent factors, when viewed together, can amount to reasonable suspicion. *United States v. Foster,* 824 F.3d. 84, 89 (4th Cir. 2016). But "the presence of additional facts might dispel reasonable suspicion." *Kansas v. Glover*, 589 U.S. 376, 386 (2020) (finding reasonable suspicion but giving the example that reasonable suspicion would not exist to stop a driver in their mid-twenties if they knew the registered owner they were seeking was in their sixties). Courts are "skeptical of Government attempts to spin ... largely mundane acts into a web of deception." *United States v. Foster,* 824 F.3d. 84, 89 (4th Cir. 2016) (quoting *United States v. Foster*, 634 F.3d 243, 248 (4th Cir. 2011).

In this case, the officer also noted numerous facts which, based on his training and experience, provided reasonable suspicion that permitted Trooper Taylor to extend the stop. Notably:

1) The vehicle smelled of unburnt marijuana. 2) Defendant had a one-way rental and claimed that he intended to fly back to North Carolina from California based on "hemorrhoids"; 3) Defendant and TD provided different states of destination for their travel; 4) Defendant stated that he planned a short stay in California which seemed odd given the extremely long time needed to travel cross-country from North Carolina; 5) Defendant and TD only claimed ownership of three of the five bags inside the vehicle. Trooper Taylor reasonably believed Defendant and TD may have been avoiding admitting ownership of bags because they contained contraband. These facts are sufficient to give rise to reasonable suspicion to Trooper Taylor that criminal activity was underway.

Defendant attempts to separate each individual fact uncovered by Trooper Taylor and assign an innocent explanation to each fact; however, this runs directly contrary to the admonition of *United States v. Foster* that "seemingly innocent factors, when viewed together, can amount to reasonable suspicion." *Foster,* 824 F.3d. at 89. Namely, defendant claims that: 1) a cross-country trip is not suspicious; 2) TD's statements about their destination, "particularly in context" did not transform innocent facts into suspicious ones; 3) Trooper Taylor's "uncorroborated" claim to smell raw marijuana is not credible. First, cross-country trips may not be suspicious; however, a one-way cross-country trip where individuals are flying back to their originating point soon after arriving may be indicative of smuggling to a trained law enforcement officer. Based on training and experience, this conduct is indicative of transporting goods cross-country and that Defendant did not want to risk these items being discovered when going through airport security. Additionally, Defendant stated he would be flying back because of his "hemorrhoids" but did not explain how a single trip across the country would not irritate his hemorrhoids while two trips across the country would.

Second, even if Trooper Taylor misunderstood TD's explanation of their itinerary, the Courts have long tolerated both reasonable mistakes of law and fact by law enforcement. *Heinen v. North Carolina*, 574 U.S. 54, 67 (2014). So, if Trooper Taylor misunderstood whether TD stated she was going "to Arizona", as opposed to "going through Arizona", this mistake would be a reasonable mistake of fact that would not undermine Trooper Taylor's determination of reasonable suspicion. Defendant and TD giving different answers as to the ultimate destination on a cross-country trip would clearly contribute to reasonable suspicion.

Lastly, Defendant asserts that Trooper Taylor lied about detecting the scent of raw marijuana. The statements cited by Defendant in his motion to suppress are self-serving from the standpoint of both Defendant and TD. (Doc. No. 23, ¶¶ 38-45). In the context of a motion to suppress, it is the responsibility of the District Court to observe witnesses and weight their credibility during a pre-trial motion to suppress. *United States v. Pulley*, 987 F.3d. 370, 376 (4th Cir. 2021). Defendant presents no information that would undermine Trooper Taylor's statement that he smelled marijuana, rather, Defendant simply states it is not true. To support this contention, Defendant cites his and TD's general denials, conclusory statements, and speculation as to why Trooper Taylor would fabricate this claim. (Doc. No. 23, ¶¶ 38-41).

Based on the information possessed by Trooper Taylor, reasonable suspicion existed to extend Defendant's traffic stop to allow for the arrival of the police canine.

1) <u>The smell of marijuana provides probable cause to extend the traffic stop and search Defendant's vehicle.</u>

Additionally, the Fourth Circuit has repeatedly held that the odor of marijuana alone can provide probable cause for a search of a vehicle. *United States v. Humphries*, 372 F.3d. 653, 658 (4th Cir. 2004); *see also United States v. Scheetz*, 293 F.3d 175, 184 (4th Cir. 2002). While smelling marijuana does not guarantee that marijuana is still present, the odor certainly provides

probable cause to believe that it is. *Humphries*, 372 F.3d. at 658. As the Fourth Circuit recently stated in *United States v. Harris,* "[w]e have repeatedly held that the odor of marijuana alone can provide probable cause to believe that marijuana is present in a particular place." *Harris,* 2025 WL 3296047(4th Cir. 2025 (unpublished), citing *United States v. Jones*, 952 F.3d 153, 158 (4th Cir. 2020) (citation modified). Thus, marijuana odor emanating from a vehicle is sufficient to justify a law enforcement officer's probable cause search of that vehicle. *United States v. Palmer*, 820 F.3d 640, 650 (4th Cir. 2016).

In this case, the officer reported smelling "raw" marijuana about eight minutes into the stop. This alone is sufficient to extend the traffic stop and search the vehicle. However, in this case Trooper Taylor had called for a police drug-detecting dog before smelling the "raw" marijuana, and Trooper Taylor elected to wait for the drug dog to arrive and confirm the smell of marijuana before conducting a search of the vehicle. Since Trooper Taylor possessed reasonable suspicion -if not probable cause- that marijuana might be present in the vehicle, the extension of the traffic stop was legally permissible.

### B. The odor of marijuana emanating from the vehicle, along with the K9 alert, provided probable cause to search the vehicle under the automobile exception.

As previously stated, the odor of marijuana emanating from a vehicle is sufficient to justify a law enforcement officer's probable-cause search of that vehicle. *United States v. Palmer*, 820 F.3d 640, 650 (4th Cir. 2016). In addition to the smell of marijuana establishing probable cause, it is well settled that a "positive alert" from a drug detection dog, in and of itself, provides probable cause to search a vehicle." *United States v. Branch*, 537 F.3d. 328, FN 2 (4th Cir. 2008), citing *United States v. Jeffus,* 22 F.3d 554, 557 (4th Cir. 1994); *see also United States v. Eura,* 440 F.3d 625, 630 (4th Cir. 2006), *vacated on other grounds,* 128 S. Ct. 853, 169 L. Ed. 2d 705 (2008). In order for the alert to be valid, a drug detection dog must be reliable. All facts surrounding a

9

dog's alert are relevant and must be examined in determining if a reasonable prudent person would think that a search would reveal contraband or evidence of a crime. *Florida v. Harris*, 133 S.Ct. 1050, 1055-1058 (2013). Evidence that the dog received a formal certification following reliability tests in a controlled setting or that the dog successfully completed a training program evaluating the dog's proficiency in locating drugs may be sufficient to support that a dog's alert provided probable cause to search. *Id*. The United States anticipates presenting testimony or other evidence of the police canine's qualifications at any motion to suppress.

## IV. CONCLUSION

Law Enforcement had reasonable suspicion and even probable cause to extend Defendant's traffic stop. Once Trooper Taylor smelled marijuana, and a police drug-detection dog alerted to the presence of contraband, there was probable cause to search defendant's vehicle under the automobile exception. Defendant's Motion to Suppress should be denied in its entirety.

Respectfully submitted on this 11th day of February 2026.

RUSS FERGUSON
UNITED STATES ATTORNEY

**/s/ Alfredo De La Rosa**
Assistant United States Attorney NC
TX Bar Number: 24075486
United States Attorney's Office
227 West Trade Street, Suite 1700
Charlotte, North Carolina 28202
Telephone: 704.227.0226
E-mail: alfredo.de.la.rosa@usdoj.gov

**A.I. CERTIFICATION**

Pursuant to the Standing Order of this Court entered June 18, 2024, and published to the Bar of the Western District on June 27, 2024, the undersigned hereby certifies:

    1.    No artificial intelligence was employed in doing the research for the preparation of this document, with the exception of such artificial intelligence embedded in the standard on-line legal research sources Westlaw, Lexis, FastCase, and Bloomberg;

    2.    Every statement and every citation to an authority contained in this document has been checked by an attorney in this case and/or a paralegal working at his/her direction as to the accuracy of the proposition for which it is offered, and the citation to authority provided.

*/s/ Alfredo De La Rosa*
Assistant United States Attorney